UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REAL CHANGE, a Washington non-profit corporation; SHARE, a Washington non-profit corporation; WHEEL, an unincorporated association; NICKELSVILLE, an unincorporated association; TIM HARRIS, an individual; JARVIS CAPUCION, an individual; and TRACEY DEGARMO, an individual; <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF SEATTLE and SEATTLE PARKS AND RECREATION, a Washington Municipal corporation; CHRISTOPHER WILLIAMS, in his individual and official capacity; and, JEFF HODGES, in his individual and official capacity; <br><br> Defendants. | No. 2:12-cv-681 <br><br> ORAL ARGUMENT REQUESTED <br> NOTE ON MOTION CALENDAR: <br> 4/23/2012 <br><br><br><br> PLAINTIFF'S EMERGENCY <br> MOTION FOR TEMPORARY <br> RESTRAINING ORDER AND <br> PRELIMINARY INJUNCTION |

## **INTRODUCTION**

Plaintiffs are organizers of a peaceful political assembly and demonstration planned for

Westlake Park starting at noon next Tuesday, April 24, and lasting for twenty four continuous

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

hours. Plaintiffs applied for a permit for this free speech event from Defendants because all such events require a permit under the Seattle Municipal Code (SMC) and because the event involved tents and overnight presence in the park. Defendants denied the permit, apparently enforcing a ban on overnight use and/or a ban on "camping" or structures in parks, found in the City's parks use ordinance, Seattle Municipal Code 18.12. Defendants, however, have discretion to issue permits for overnight use, structures, and camping under the ordinance.

In violation of both the First Amendment and Article 1, Section 5 of the Washington Constitution, the legislative scheme provides no guidelines or direction to Defendants on how to use such discretion. Thus—even where the proposed use is unquestionably for political speech protected by the First Amendment, as here—the decision whether to allow or prohibit the activity is left entirely up to the discretion of Defendants.  Also, anecdotal evidence suggests that Defendants are administering the ordinance in a viewpoint-based manner (though even if this were not the case, the legislative scheme would be invalid simply because the lack of guidance fails to prevent viewpoint-based discrimination from occurring).  The legislative scheme unconstitutionally fails to provide for written decisions or any other record of the basis for denying a requesting use, precluding effective administrative or judicial review.

Because the demonstration will occur within days, Plaintiffs were forced to file this action and motion for injunction on an emergency basis. Defendants formally denied Plaintiffs' appeal around 3:00 p.m. on Monday, April 26, 2002.  Since that time, a small group of volunteer attorneys and paralegals have been working around the clock to prepare these materials for the Court's consideration prior irreparable harm to Plaintiffs' speech and assembly rights.

PLAINTIFF'S EMERGENCY MOTION FOR
INJUNCTIVE RELIEF

Page 2

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

**RELIEF REQUESTED**

Plaintiffs respectfully request that the Court: (1) find Defendants' permitting ordinance unconstitutional, on its face and as applied, under both the First Amendment to the U.S. Constitution and Article I, Section 5 of the Washington Constitution; (2) enjoin Defendants from hindering the event planned for April 24 and 25, for which Plaintiffs submitted a permit application, and (3) pending a hearing on a preliminary injunction, temporarily enjoin Defendants from denying any permit for political speech-related events in public parks under the current, constitutionally flawed ordinance.

**FACTUAL BACKGROUND**

**Plaintiffs**. Plaintiff Tim Harris is the founding director of Plaintiff Real Change. Plaintiff Real Change is a Washington non-profit entity that provides opportunity and a voice to low-income people while taking action for economic justice, including publishing a weekly newspaper sold by approximately 350 low-income people each month. Dec. of Harris at para. 1. Plaintiff SHARE is a Washington non-profit organization presently operates 16 indoor shelters, storage lockers, a housing-for-work program, and several other projects, and houses over 500 people nightly. Dec. of Morrow at para. 3. Plaintiff WHEEL is a non-profit and non-hierarchical group of homeless and formerly homeless women working on ending homelessness for women. Dec. of Harris at para. 27. Plaintiff Nickelsville is an unincorporated association and eco-village with sturdy, bio-friendly structures for up to 1,000 people in Seattle dedicated to protecting homeless people being driven out of downtown by the City. Dec. of Harris at para. 26.

**Plaintiffs' speech**. This spring, Plaintiffs are participating in a campaign called Occupy the Committee to End Homelessness in King County ("Occupy CEHKC"), in the spirit of Occupy Wall Street/Seattle.  Dec. of Harris at para. 1, 14. Occupy CEHKC seeks to influence

PLAINTIFF'S EMERGENCY MOTION FOR
INJUNCTIVE RELIEF

Page 3

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

CEHKC, a local government-sponsored homelessness policy making body, to attend to the expressed survival needs of homeless people and to broaden their scope of concern from human services delivery to economic justice. Dec. of Harris at para. 2. As part of Occupy CEHKC campaign, Plaintiffs organized the April 24-25 political demonstration to convey several messages. Dec. of Harris at para. 4. First, Plaintiffs intend to protest the Defendants and their ongoing effort to criminalize and marginalize the homeless population. Dec of Morrow at para. 10. Defendants have engaged in a concerted effort over the past fifteen years to "sanitize" the downtown business core around Westlake Park for the comfort of shoppers and tourists by pushing homeless populations to south downtown through a number tactics, including the now infamous "panhandling" ordinance passed by the City Counsel and backed by the Downtown Seattle Association (DSA), the Seattle Convention and Visitors Bureau, The Monorail, Starbucks, The Mariners, and a host of other downtown interests. The proposed panhandling ordinance was only defeated by the Mayor's veto after significant public backlash. Dec. of Harris at para. 29. At the same time, the City has cut back on funding for emergency services, including closing homeless shelters. Dec. of Harris at para. 30.

Second, Plaintiffs intend to protest major downtown corporations and retailers in the immediate vicinity of Westlake Park. By and through purported community groups, such as the DSA, these corporations have participated in, and profited from, the Defendants' efforts to sanitize the business core near Westlake Park. Also, Defendants have granted DSA specific benefits unavailable to Plaintiffs. For example, Defendants annually give DSA a permit for use of Westlake Park for approximately five weeks during the winter holidays for a carousel, which lures shoppers to the area. Defendants waive all fees for DSA's permits, on the justification that DSA and Defendants are engaged in a "partnership." So, while DSA pays nothing for a month

PLAINTIFF'S EMERGENCY MOTION FOR
INJUNCTIVE RELIEF

Page 4

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

long permit, Plaintiffs must pay to obtain a permit, not to mention electricity and other costs. All of this is done at the expense of Seattle's homeless. Dec. of Harris at para. 31-33.

Third, through direct access and contact, Plaintiffs intend to use the event as opportunity to educate and mobilize Seattle's homeless population for participation in advancing homelessness as a political issue. And, of course, the event is designed to raise awareness of the human cost of homelessness among all people of Seattle. Dec. of Harris at para. 34.

To communicate their political messages in a sincere and powerful way and, as the only way to directly access Seattle's homeless population, Plaintiffs intend to conduct their event for 24 continuous hours from noon on April 24, 2012 through noon on Wednesday, April 25, 2012 in Westlake Park. Dec. of Harris at para. 4-5.

Plaintiffs have conceived the communication strategy of a 24-hour encampment in the tradition of encampments being used to communicate dramatically and literally the needs and demands of impoverished and dispossessed people.  Dec. of Harris at para. 7. Plaintiffs are aware that, throughout the United States and internationally, continuous encampments have long been a well-established way to demonstrate both the immediate needs of those participating, and their commitment to maintain a sustained level of organizing activity until those needs are met.  Harris Dec. at para. 7-8. Recently, many of plaintiffs' individual members and staff participated in one fashion or another in "Nickelsville," a continuous political assembly involving tents, modeled on the "Hoovervilles" of the Great Depression, and begun to protest sweeps of homeless encampments by the administration of former Seattle Mayor Greg Nickels, and the simultaneous lack of adequate services for homeless people in the City.  Dec. of Harris at para. 7-8.

**The public park.** Westlake Park is a public park with a strong history as Seattle's main traditional public forum. Dec. of Harris at para. 35. In 1996, City Councilmember Jan Drago

PLAINTIFF'S EMERGENCY MOTION FOR
INJUNCTIVE RELIEF

Page 5

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

chaired the Westlake Park Management Review Task Force, which issued a report addressing management of Westlake's public spaces. Exhibit 4 to Dec. of Pence. The task force describes Westlake as "an active place where **there is always something happening**" and as a "central downtown civic gathering space  . . . for year round programming of active events, **day and night.**" Exhibit 4 to Dec. of Pence at pg. 1, para. 1 and pg. 3, bullet 8 (emphasis added).

Photographs taken in Westlake Park on the evening of April 16, 2012 at approximately 10:30 p.m., thirty minutes after the purported curfew hour, approximately one dozen individuals were observed and photographed using in the park. Exhibit 3 to Dec. of Pence; Dec. of Pence at para. 12-15.

In the early 1990s, Defendants or their predecessors issued a permit allowing several days of overnight presence and camping in Westlake Park. Dec. of Morrow at para. 19. Because Plaintiffs' peaceful political assembly would, like the early 1990s permit, last all night and include tents, Plaintiffs applied for a permit from Defendants.

**Defendants**. Defendant Christopher Williams is the current Superintendent of Seattle Parks. Dec. of Pence at para. 3. Defendant Jeff Hodges is the acting manager of parks scheduling and the senior events scheduler. Dec. of Pence at para. 3-4. Both Mr. Williams and Mr. Hodges work for Defendant Seattle Parks and Recreation. Dec. of Pence at para. 3-4. Seattle Parks and Recreation is an agency of Defendant City of Seattle, a local municipal government. Dec. of Pence at para. 5. Collectively, the Defendants, are responsible for, and act under, the Seattle Municipal Code (SMC). Dec. of Pence at para. 6.

PLAINTIFF'S EMERGENCY MOTION FOR INJUNCTIVE RELIEF

Page 6

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

**SMCs governing Parks and permitting.** SMC chapter 18.12 governs the administration of Seattle parks[1]. Dec. of Pence at para. 6. SMC 18.12.040 provides for the Parks Superintendent's authority and discretion:

> The Superintendent shall have the power to enforce the provisions of this chapter. The Superintendent may, in accordance with the Administrative Code [SMC 3.02], **adopt, amend and rescind rules and regulations** consistent with this Park Code in order to manage and control the park and recreation system of the City including rules that: A. **Clarify, interpret or apply** this Park Code; B. **Regulate the use of parks**; C. **Regulate conduct in parks**; . . .

Exhibit 1 to Dec. of Pence (emphasis added). The Superintendent also has the specific power to require a permit for "any use" of any part of any park "that **differs in kind from the use and enjoyment** of the park or recreational facilities **by the general public of the premises**." SMC 18.12.042, attached as Exhibit 2 to Dec. of Pence (emphasis added). Chapter 18.12 fails to define "differs in kind from the use and enjoyment," and "the general public of the premises."

SMC 18.12 does not furnish the Superintendent with any directions, a list of factors, definitions, or policies that would limit or guide the exercise of discretion over these considerable grants of power. SMC 18.12 does not require the Superintendent to grant permits, and does not provide for deferential treatment of free speech-related park permits. SMC 18.12 also fails to: (1) require the denial of a permit or appeal be made in writing; (2) expressly provide for the right to an administrative and judicial review of a denied permit; or (3) require that permit applications and appeals be reviewed subject to a specific timeline or other process protections.

The SMCs impose a slew of limitations on park use. By way of example, in the past six months Defendants have administered the following rules in the context of permits for political

---

[1] SMC 18.12 in its entirely is available at the following internet address: http://clerk.ci.seattle.wa.us/~public/toc/t18.htm. Dec. of Pence at para. 9.

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

demonstrations in parks: no amplified sound, SMC 18.12.170; no trespassing, SMC 18.12.279 and 18.12.070; no camping, SMC 18.12.250; curfew, SMC 18.12.040(F); and no sign posting, SMC 18.12.050. The permitting scheme, which Defendants are charged with administering, exists solely to provide for one-time exceptions these rules.

**Inconsistent permitting practices**. Plaintiffs are aware of recent occasions when Defendants have limited functional aspects of permits related to political speech and created additional procedural burdens on those permits. These include limiting the volume and duration of amplified sound, limiting the event's length, responding to the permit applications in an inconsistent and tardy manner, requiring closed-door appeal meetings, and levying inconsistent fees for no apparent reason. Dec. of Sugg at para. 1-14. Defendants have also issued permits apparently allowing large corporate promotion signs to be posted during non-political speech events, but have enforced the no-sign posting rule against individuals at political events. Dec. of Pence at para. 27-28.

By way of example, a group called Hip Hop Occupies applied to Defendants for a permit for a musical political rally and protest event at Westlake on November 18, 2011 from 3:00 p.m. to 10:00 p.m. with sound to stop at 10:00 p.m. Dec. of Sugg at para. 1, 6. After a two-week delay in responding to the permit request, and after the applicant was forced to begin promoting the event, Mr. Hodges denied the permit as requested. Dec. of Sugg at para. 3-4. He claimed the amplified sound would need to stop by 6:00 p.m. because of "seasonal interpretations." Dec. of Sugg at para. 4. However, Defendants had permitted amplified sound until far later for other events, including corporate promotional events. Dec. of Pence at para. 10.

During the appeals process, Defendants required the applicant to appear at a closed-door meeting with third party community members and to accept conditions imposed by the

PLAINTIFF'S EMERGENCY MOTION FOR INJUNCTIVE RELIEF

Page 8

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

community members before Defendants. Dec. of Sugg at para. 9. However, the appeal did not result in a granting of the original permit but only a concession of allowing amplified sound until 8:30 p.m., not 10 p.m. as requested. Dec. of Sugg at para 14. By the end of the process, in order to obtain a permit for only part of what was requested, the applicant had been forced to mount a media and letter writing campaign and to retain an attorney to pursue the matter. Dec. of Sugg at para. 6-8.

Plaintiffs are also aware of recent occasions when Defendants have afforded privileges to permits for non-political and corporate-promotion type events. For example, Defendants waived all fees, including those for administrative and electrical costs, for the permit issued to DSA for the month-long carousel event. Dec. of Pence at para. 10. When asked for an explanation for this inconsistent treatment, Mr. Hodges indicated that DSA and the Parks Department are engaged in a "partnership." Dec. of Pence at para. 11.

**Plaintiff's application and appeal process**. Plaintiffs' permit requested a twenty-four hour event, including all-night presence in the park, the erection of tents, and waiver of the application fee. Dec. of Harris at para. 15.

Around midday on Thursday, April 12, Defendant Jeff Hodges called Mr. Harris, indicating that the permit would be granted, but only with several modifications, including: only tents for medial and information purposes, a 10:00 p.m.-6:00 a.m. curfew, a $50 permitting fee, and an optional $75 electrical fee.  Dec. of Harris at para. 18.

By the end of the day on Thursday, April 12, Mr. Harris emailed an appeal letter to Defendants because the modifications unacceptably altered both the Plaintiffs' intended speech and intended audience.  Dec. of Harris at para. 19. The appeal letter is attached as Exhibit 1 to Dec. of Harris.

PLAINTIFF'S EMERGENCY MOTION FOR
INJUNCTIVE RELIEF

Page 9

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

Around midday on Friday, April 13, Defendant Christopher Williams called Mr. Harris to request a meeting with Mr. Harris, the other Plaintiffs, and respective legal counsel.  Dec. of Harris at para. 20.

The meeting was held Monday, April 16 at 10:00 a.m. at Seattle Parks and Recreation headquarters.  Dec. of Harris at para. 20. At the outset of the meeting Superintendent Williams indicated he was denying the appeal. With the opportunity to express himself fully, Mr. Williams only gave one reason: he had concerns about "consistency" and jeopardizing unrelated prosecutions of Occupy Seattle protesters, arrested for setting up tents at Westlake. Dec. of Pence at para. 20. He never cited health or safety or any other governmental interest as the basis for denial, Dec. of Pence at 21, though, at one point, legal counsel for the City, indicated— without elaboration—that "health and safety" was also a concern, Dec. of Pence at para. 22. Plaintiffs stated that if forced out of the park, the demonstration would be forced to encamp on the sidewalk in front of Nordstrom—a less safe, less healthy alternative to the park. Dec. of Pence at para. 23; Dec. of Morrow at para. 11-13.

Superintendent Williams offered to allow two or three "symbolic" tents, but no overnight presence in the park. Dec. of Harris at para. 21. Plaintiffs responded that there was nothing "symbolic" about the 2,500 people forced to sleep outdoors every night in King County, and that a few unattended tents would fail to communicate that reality. Dec of Harris at para. 23, Dec. of Morrow at para. 10.

Late Monday afternoon, Defendants confirmed their verbal denial by a faxed letter. Exhibit 2 to Dec. of Harris, Dec. of Harris at para. 21. The appeal response letter indicated a different rationale for the decision to deny the permit than Superintendent Williams stated during the meeting. The letter cites the SMC, and—without elaboration—concerns for health and safety,

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

and interference with nearby businesses and residents, and impediments to use of the park by the public. Upon receiving the letter, Plaintiffs decided to apply "under-protest" for the modified daytime-only permit offered by Defendant, including paying the fee, and to pursue this legal action. Dec. of Harris at para. 38; Dec. of Morrow at para. 11.

## PRELIMINARY INJUNCTION

Plaintiffs are entitled to a preliminary injunction upon a showing they are A) "likely to succeed on the merits," B) "likely to suffer irreparable harm in the absence of preliminary relief," and C) "the balance of equities tips in [their] favor and an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, Inc., 129 S.Ct. 365, 374 (2008). Motions for preliminary injunctions are analyzed under a "sliding scale" approach, such that the greater the irreparable harm, the less the probability of success must be shown, and vice versa. *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003).

### A.    Success on the Merits

Plaintiffs are likely to succeed on the merits because 1) Defendant's permitting scheme is a *per se* unconstitutional prior restraint under the Washington Constitution, 2) it is unconstitutionally overbroad, 3) it does not require written and reviewable decisions, 4) it is being applied to free speech in a traditional public forum, and 5) it is being administered in a manner that discriminates based on viewpoint.[2] Each of these arguments addresses the speech value of tents and overnight presence in Westlake, so that issue is addressed first [the following

---

[2] Plaintiffs do not challenge Defendants' authority to require permits for ministerial purposes such as regulating competing uses, even for free-speech events. Likewise, Plaintiffs do not challenge Defendants' authority to impose those reasonable time, place, and manner restrictions which are necessary to a compelling governmental interest. Plaintiffs concede that defendants have the power to impose an administrative fee on first amendment permits, but only if the fee is applied consistently and is narrowly tailored to actual administrative costs. Plaintiffs concede that the challenged ordinance is content-neutral on its face.

PLAINTIFF'S EMERGENCY MOTION FOR
INJUNCTIVE RELIEF

Page 11

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

legal authorities, factual citations, and arguments are hereby incorporated by reference to the discussion of irreparable harm, *infra* at pg. 21, ln. 5-7].

Tents and structures are well-established as viable instruments of political speech, and maintaining tents and temporary structures continuously have acknowledged speech value. See, e.g., *Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984); *Students Against Apartheid Coalition v. O'Neil*, 660 F.Supp. 333 (W.D. Va. 1987); *ACORN v. City of Tulsa,* 835 F.2d 735, 742 (10th Cir. 1987) (recognizing speech value of symbolic structures in parks); *University of Utah Students Against Apartheid v. Peterson,* 649 S. Supp. 1200, 1204-1205 (D. Utah 1986) (students maintained continuous presence with shanties over many months, enhancing their expressive character).   Two federal district courts have recently held that "tenting and sleeping" in a public park as part of a political demonstration unquestionably is expressive conduct implicating the protections of the First Amendment.  *Occupy Minneapolis v. County of Hennepin,* ____ F. Supp. 2d ___, 2011 WL 5878359, *4 (D. Minn. 2011) (sleeping and overnight occupation of tents in a park was expressive conduct protected by the First Amendment, though it could be regulated by a permit scheme that functioned as a valid time place and manner restriction); *Occupy Fort Myers v. City of Fort Myers,* ____ F. Supp. 2d ___, 2011 WL 5554034, *5 (M.D. Florida 2011) (same).

Assertions by both Plaintiffs and an agent of Defendants show that the presence of tents and overnight presence are expressive conduct. Plaintiffs discuss the importance of tents and overnight presence to protesting homelessness, Dec. of Harris at para. 6, Dec. of Morrow at para. 10, as well as the tradition of continuous overnight political assembly and the use of tents as speech, citing examples from around the world as far as 1932, Dec. of Harris at para. 7-14.

PLAINTIFF'S EMERGENCY MOTION FOR INJUNCTIVE RELIEF

Page 12

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

Defendants, through one of their speaking agents, agree: tents are speech. Mr. Brock Milliern, currently Acting Manager of Stewardship and Sustainability for Seattle Parks and Recreation. Exhibit 5 to Dec. of Pence at pg. 2, ln. 1-2. He gave an interview in the course of the criminal prosecution of an Occupy Seattle protester, charged in relation to the use of tent in Westlake in October. Dec of Pence at para. 8.

| | |
|---|---|
| Trieweiler | Okay. Do the tents themselves seem like a form of political expression to you? |
| Milliern | Not at first. |
| Trieweiler | At some point? |
| Milliern | Yeah. |
| Trieweiler | When? |
| Milliern | I don't know when my opinion changed about hat [sic]. |

Exhibit 5 to Dec. of Pence at p. 85, ln. 17-22 and pg. 86, ln. 1. A few questions later, Mr. Trieweiler followed up as to why Mr. Milliern concluded that the tents themselves were expressive:

| | |
|---|---|
| Trieweiler | What made you come to that conclusion or that opinion [that tents are speech]? |
| Milliern | I feel like at some point the protesters, Occupy Seattle changed and really made the tents a focus of their protest and that, you know, taking the park with the tents became a focus of the protest. |

Exhibit 5 to Dec. of Pence at pg. 88, ln. 13-16.

1. Plaintiffs are likely to succeed because Defendants' permitting system is a *per se* unconstitutional prior restraint under Article 1, Section 5 of the Washington Constitution.

It is well-established that permitting schemes like Seattle's constitute a prior restraint when applied to speech and assembly. See *Shuttlesworth v. City of Birmingham,* 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965). While prior restraints are disfavored but not *per se* invalid

PLAINTIFF'S EMERGENCY MOTION FOR
INJUNCTIVE RELIEF

Page 13

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

under the U.S. Constitution, *Forsyth County*, 505 U.S. at 130[3], they are categorically invalid under Article I, Sec. 5 of the Washington Constitution. See *O'Day v. King County*, 109 Wn.2d 796, 804 (1988). Defendants' current permit ordinance and administrative practices impose timing and financial burdens far in excess of those required for management of competing uses or ministerial purposes. See October 22 Coalition, 550 F.3d at 797-98. As such, the ordinance and practices constitute *per se* unconstitutional, making Plaintiffs likely to succeed on the merits.

2.  Plaintiffs are likely to succeed when the permitting ordinance provides government administrators with unbridled discretion and contains no guidance for decision-making or standards for review.

> [T]he success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decisionmaker rests not on whether the administrator has exercised his discretion in a content-based manner, ***but whether there is anything in the ordinance preventing him from doing so***.

*Forsyth County*, 505 U.S. at 133, n. 10 (emphasis added); see also *October 22 Coalition*, 550 F.3d at 802.

An otherwise content-neutral time, place, and manner restriction is unconstitutional if it delegates overly broad discretion to a government official. *Forsyth County*, 505 U.S. at 130; *see also Galvin v. Hay*,[4] 374 F.3d 739, 746 (9th Cir.2004). To determine whether an ordinance is unconstitutionally over-broad, the Court must look to the totality of the factors to determine whether the ordinance (1) contains adequate safeguards to protect against official abuse, (2) requires the administrator to explain the decision, and (3) includes provisions making the decision reviewable. *See October 22 Coalition*, 550 F.3d at 799. In *October 22 Coalition*, the

---

[3] In *Forsyth County*, the Court held that permitting schemes constitute a "prior restraint on speech" and face a "heavy presumption against validity." 505 U.S. at 130.

[4] The full rule is that, to be valid, a restriction (1) must not delegate overly broad discretion to a government official; (2) must not be based on the content of the message; (3) must be narrowly tailored to serve a significant governmental interest; and (4) must leave open ample alternatives for communication. *Forsyth County*, 505 U.S. at 130.

PLAINTIFF'S EMERGENCY MOTION FOR
INJUNCTIVE RELIEF

Page 14

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

1   Ninth Circuit held Seattle's parade permitting ordinance unconstitutional because, on its face and

2   as-applied, it gave local officials unbridled discretion to modify speech activities. *Id*. Notably,

3   the *October 22* ordinance actually required the administrator to grant the permit, and instructed

4   the administrator to only modify permits for one reason: to ensure traffic safety and flow. *Id*.

5          This framework applies equally to schemes which generally prohibit certain activities,

6   including maintaining structures in parks, but which allow exceptions at the discretion of local

7   officials.  *See ACORN v. City of Tulsa,* 835 F.2d 735 (10th Cir. 1987).  In *ACORN,* the City of

8   Tulsa generally prohibited structures in parks, but retained the authority to make exceptions to

9   the general prohibition.  Lacking guidance or standards for those exceptions, the scheme was

10  facially unconstitutional.  *Id.* at 740-742.

11         Where the permitting authority has not "made explicit by textual incorporation, binding

12  judicial or administrative construction, or well-established practice" any "authoritative

13  constructions of the ordinance," the Court looks solely to the ordinance to determine whether it

14  provides sufficient guidance to administrators. *Id.* (holding that administrators' statements of

15  considerations informing and limiting discretion which were unofficial and unpublished policy

16  had no effect on over-broad ordinance).

17         Here, no published authoritative constructions are available, so the Court need merely

18  read the ordinance to determine whether it is over-broad. Even more discretionary than the

19  October 22 ordinance, SMC 18.12 does not require Defendants to grant permits related to free

20  speech events; and does not contain statement narrowing and defining the basis upon which a

21  permit may be modified. The ordinance also does not contain any policies, guidelines, or

22  standards to aid the administration of the Superintendent's discretion. The ordinance only widens

23  the scope of the Superintendents' authority, SMC 18.12.040(E), going so far as to allow the

24

PLAINTIFF'S EMERGENCY MOTION FOR
INJUNCTIVE RELIEF

Page 15

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

interpretation that a permit could be required for almost any conceivable park activity other than, perhaps, sitting quietly. The ordinance is so broad that it is nearly impossible to imagine its limit, let alone be guided by its limit.

3. Plaintiffs are likely to succeed when the permitting ordinance fails to ensure that decisions will be written and reviewable.

The breadth of [an ordinance] is **particularly troublesome** when we consider its **failure to require officials to articulate their reasons** for denying permission, **including both a specific statement of reasons and the availability of both an administrative and judicial review process.**

*October 22 Coalition*, 550 F.3d at 801 (emphasis added).

A permitting ordinance must contain requirements that render the official's decision subject to effective judicial review. *Forsyth County*, 505 U.S. at 130; *October 22 Coalition*, 550 F.3d at 798.   To determine whether the ordinance provides for reviewable process, the court should look for "narrowly drawn, reasonable and definite standards" that guide the hand of the administrator. *Id.* The lack of records makes effective review almost impossible and is, by itself, a basis for holding an ordinance unconstitutional. *See October 22 Coalition*, 550 F.3d at 802.

On its face, SMC 18.42 is unconstitutional on its face because: 1) it fails to require administrators to articulate reasons for a denying a permit or requiring conditions, 2) fails to require administrators to issue written decisions, 3) fails to provide for timely and transparent administrative review, and 4) fails to provide for any right whatsoever to judicial review. These flaws create the unacceptable risk that Defendants are granting permits for favorable speech, while modifying and denying permits for unfavorable speech, not to mention make the Court's job of assessing actual viewpoint-based decisions effectively impossible. However, anecdotal evidence indicates that Defendants are engaged in viewpoint-based permitting.

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

4. Plaintiffs are likely to succeed on the merits because the Plaintiffs' event constitutes free speech in a traditional public forum and Defendants bear "an extraordinarily heavy burden."

The Supreme Court has emphasized in a long line of cases that **robust political discourse within a traditional public forum is the lifeblood of a democracy.**

*October 22nd Coalition*; 550 F.3d at 797 (emphasis added).

The right to free speech and peaceful assembly is guaranteed by the 1st Amendment to the U.S. Constitution and Article I, Sections 5 and 7 of the Washington Constitution's Declaration of Rights. Public parks are quintessential traditional public forums for the exercise of political speech and assembly. *Hague v. CIO*, 307 U.S. 496, 515-16 (1939)[5]. Because of the special status of traditional public fora in our constitutional form of government, "the government must bear **an extraordinarily heavy burden** to regulate speech in such locales." *NAACP Western Region v. City of Richmond*, 743 F.2d 1346, 1355 (9th Cir. 1984) (emphasis added).

Westlake Park is indisputably a public park and traditional public forum. It has a strong tradition as Seattle's main stage for free speech. Dec. of Harris at para. 39. The City Council has described the park as "a place where **there is always something happening** . . . . **day and night.**" Exhibit 4 to Dec. of Pence at pg. 1, para. 1 and pg. 3, bullet 8 (emphasis added). Although speech in public forums like Westlake Park may be subject to reasonable time, place, and manner restrictions, such restrictions must pass strict scrutiny when viewpoint-based or when aiming at speech, and must pass intermediate level scrutiny when not aiming at, but hitting, speech.

---

[5] "Wherever the title of streets and parks may rest, they have immemorially been held in trust for he use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens and discussing public, questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights and liberties of citizens." *Hague v. CIO*, 307 U.S. at 515-16.

PLAINTIFF'S EMERGENCY MOTION FOR
INJUNCTIVE RELIEF

Page 17

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

This presumption in favor of free expression applies particularly to requirements to obtain permits to use traditional public forums for free speech activities. See *Forsyth County, GA v. Nationalist Movement*, 505 U.S. 123, 130, 112 S.Ct. 2395 (1992).

Even if the restriction passes the appropriate standard of review, the government may not use such restrictions to prevent speakers from reaching their intended audience or altering their intended message, such that the government may not exclude speakers from a forum that is accessible and where the intended audience is expected to pass. *Students Against Apartheid Coalition v. O'Neil*, 660 F.Supp. 333, 339 (W.D.Va. 1987). In determining whether a restriction is valid, courts should consider (1) the speakers' intended audience and (2) the extent to which their chosen location contributes to their message. See *Million Youth March. Inc. v. Safir*, 18 F.Supp. 2d 334, 347-48 (S.D.N.Y. 1998).

The all-night aspect of the assembly and the use of tents as speech are legitimate and fundamental expressions of Plaintiffs speech, as argued and substantiated *supra* at pg. 12 ln. 6-pg. 13, ln. 18. Plaintiffs incorporate those arguments, legal authorities, and factual citations by reference into this section. As Plaintiffs message addresses topics like city governance and normative policy issues, and seeks to engage and persuade the general public, their demonstration is plainly constitutes protected speech and assembly.

5. Plaintiffs are likely to succeed when Defendants appear to be engaging in invidious viewpoint discrimination and have given no indication of acting out of a sincere governmental interest in enforcing either the camping or curfew rules against Plaintiffs.

Though Plaintiffs acknowledge that city governments have a legitimate interest in preserving the attractiveness and health and safety of public spaces and facilities, as well as promoting economic activity, Defendants have demonstrated that none of these interests is the basis of their denial Defendant's permit for an overnight event involving tents.

PLAINTIFF'S EMERGENCY MOTION FOR
INJUNCTIVE RELIEF

Page 18

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

1    In the formal appeal response letter Defendants cited several bases for denying the

2 permit, all of which are insincere. First, Defendants cited health and safety. Exhibit 2 to Dec. of

3 Harris.[6] However, in that same letter, Defendants offered to allow Plaintiffs to camp at City Hall.

4 Any health and safety concerns that exist for camping at Westlake Park would surely exist for

5 camping at City Hall. Defendants were also aware that, should they deny Plaintiff's permit,

6 Plaintiffs would be forced to conduct their all-night demonstration on sidewalks surrounding

7 nearby businesses, a less-safe, less-healthy option than demonstrating within the park. Dec. of

8 Morrow at 13. Also, Defendants or their predecessors have permitted camping at Westlake on at

9 least one occasion in the past. Dec. of Morrow at 19. Thus, Defendants' denial is not sincerely

10 predicated on health and safety.

11    Second, the appeal response letter cited the impact on nearby business interests as a basis

12 for denial of the overnight aspect of the permit. Exhibit 2 to Dec. of Harris. Given that the

13 businesses referenced are closed nightly at or before 10:00 p.m. and do not reopen until at or

14 after 6:00 a.m., Dec. of Pence at para. 24, and given that Defendants are restraining Plaintiffs

15 from using Westlake only during those hours, the insincerity of the concern about an overnight

16 permit interfering with businesses is apparent.

17    Third, the appeal response letter cited the impact on use of the park by the public a basis

18 of denying the use of tents. Exhibit 2 to Dec. of Harris. Given that Defendants grant permits for

19 Westlake that significantly impede public use, such as the DSA permit which allows the

20

---

21 [6] Defendants also cited the SMC itself as a basis for denying Plaintiff's permit. Exhibit 2 to Dec. of Harris. While
SMC imposes a curfew and proscribes camping, this argument misses the point of the permitting scheme. All park
22 uses for which a permit is required are, as a technical matter, deviations from the SMC. The entire presumption of a
permitting scheme is that the scheme's administrators will exercise their judgment, within the limits of legislative
23 guidance and constitutional protections, to permit uses that otherwise could not occur. On the one hand Defendants
are charged with the duty of considering exceptions to these provisions, on the other they claim the mere existence
24 of these provision as a basis to not consider an exception. This claimed basis for denial of Plaintiff's permit is also
insincere, let alone ignores both Defendants' professional purpose and past practices.

PLAINTIFF'S EMERGENCY MOTION FOR
INJUNCTIVE RELIEF

Page 19

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

placement of a large carousel, fence, tents, and other accoutrement, for a period five weeks, Dec. of Pence at 25, the insincerity—or, perhaps, clear example of viewpoint discrimination—of this claimed basis for denial is apparent.

Defendants' real basis for denying the permit appears to be viewpoint-based. During the April 16 appeal meeting, when Superintendent Williams candidly explained his decision, he did not mention concerns about health and safety, interference with businesses, residents or the public. Dec. of Pence at para. 20-21. Rather, he said the curfew could not be waived because it would set a precedent, allowing others to use the park in a similar fashion for political speech. Dec. of Pence at para. 20-21. Other concerns were only raised by legal counsel, and after a closed-door opportunity to refine the justification, potentially in preparation for this litigation.

Assuming, for sake of argument, that Defendants' decision is genuinely motivated by legitimate governmental interests, then, practically speaking, it is difficult to understand how those interests would be substantially burdened by Plaintiffs' one-night event. There is no reason to think that the burden of one night of occasional police patrols, or park facilities, appearance, or other issues would be so harmed as to justify restraining Plaintiff's constitutionally protected speech and assembly.

## B.    Irreparable Harm

The deprivation of the right to engage in political speech or assembly constitutes irreparable harm. "Loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). The Ninth Circuit adopted this standard when evaluating preliminary injunctive relief to safeguard speech rights. *See S.O.C. Inc. v . County of Clark*, 152 F.3d 1136, 1148 (9th Cir. 1998) (irreparable harm threatened by ordinance banning canvassing on streets

PLAINTIFF'S EMERGENCY MOTION FOR
INJUNCTIVE RELIEF

Page 20

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

and sidewalks); *Foti v. City of Menlo Park*, 146 F.3d 629, 643 (9th Cir. 1998) (irreparable harm threatened by ordinance regulating picketing, leafleting, and display of signs on public property); *Mitchell v. Cuomo*, 748 F.2d 804 (2nd Cir. 1984) ("[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary" [for issuance of preliminary injunctive relief].) Here, the Plaintiffs' message of protest against an orchestrated campaign by city government and corporate interests to profit at the expense of the homeless population is plainly political speech.

The all-night aspect of the assembly and the use of tents as speech are legitimate and fundamental expressions of Plaintiffs' speech, as cited, substantiated, and argued *supra* at pg. 12 ln. 1-pg. 13, ln. 16.

Approval of a permit that would modify the speaker's intended message or intended audience in an objectionable manner constitutes a constructive denial, and, thus, an irreparable harm.[7] "[B]oth the message and the ability to reach an audience are sensitive to the place and method of communication." *October 22 Coalition v. Seattle*, 550 F.3d 788, 796 (9th Cir. 2008). "The ability to communicate a particular message in a particular location can significantly contribute to the effectiveness of that communication." *Santa Monica Food Not Bombs*, 450 F.3d 1022, 1047 (9th Cir. 2006). In *Dr. Martin Luther King Jr. Movement, Inc. v. Chicago*, officials violated the First Amendment by preventing a march through a particular neighborhood even though the city offered an alternate route through a different neighborhood because the demonstrators intended to publicize and protest a pattern of violence against a population

---

[7] "If all speech permit schemes were immune from facial challenge simply because they required officials to permit access to *some* forum for speech, legislatures would simply be encouraged to draft their regulations more broadly, sweeping up a broad class of speech and then leaving administrators a free hand to make extensive "modifications" within that class. This would lead to the anomalous result that a statute conferring more discretion on administrators would be less susceptible to facial challenge." *October 22 Coalition*, 553 F.3d at 796-97.

PLAINTIFF'S EMERGENCY MOTION FOR
INJUNCTIVE RELIEF

Page 21

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

attempting to reside in or travel through that particular neighborhood. 419 F.Supp. 667, 672-74, (N.D. Ill. 1976). That Defendants may claim to have offered to grant the permit after unacceptably modifying it does not resolve the irreparable harm or constitutional flaw.

The injunctive relief requested will prevent irreparable harm to Plaintiffs' intended political message. The core element of Plaintiffs' intended political message is a continuous twenty-four hour assembly in Westlake Park. Dec. of Harris at para. 23. By assembling throughout the night, Plaintiffs are able to highlight for the general public the reality that many people live in public parks, in the elements, under inhospitable and inhumane conditions, twenty four hours per day, every day of the year. Dec. of Harris at 23. By being physically present overnight, and only by being physically present, are Plaintiffs able to communicate dedication to the individuals living on our streets, to show sincere commitment to the plight of those people, and to bring the general public's attention to the immediate and significant failure of our society to meaningfully help homeless people.

The choice to use Westlake Park, as opposed to some other public park or venue, is critical to the substantive, symbolic, strategic value of Plaintiffs' message and audience. Westlake Park is important to the Plaintiffs' substantive message because it is a symbol and epicenter of the campaign to sanitize downtown for shoppers and tourists at the expense of the homeless. Dec. of Harris at para. 38. It is also the chosen venue because homeless people actually live there. Dec. of Harris at para. 38. Westlake is symbolically important because it is the location of many important social events, as diverse as mourning national tragedy, celebrating holidays, and protesting war, inequality, and globalization. Dec. of Harris at para. 38. Westlake Park is strategically important to getting the message to a wide audience because it is

well-known, centrally-located, easily accessible by public-transit, and located at the heart of Seattle's business, shopping, and transportation core. Dec. of Harris at para. 38.

Also, the injunctive relief requested will prevent irreparable harm to Plaintiffs' intended audience. By assembling for twenty-four continuous hours in a public park, Plaintiffs intend to educate and mobilize Seattle's homeless population, in addition to the general public. Dec. of Harris at para. 34. Many homeless people live in and around Westlake and are not in the park, or are difficult to locate, during daylight hours. Dec. of Harris at 39. Plaintiffs only have access to their intended audience by assembling in a public park at night. Dec. of Harris at 34. Thus, preventing Plaintiffs from assembling continuously for twenty four hours also inflicts irreparable injury on Plaintiffs' intended audience.

Based on the foregoing, the elements of 1) a twenty-four hour continuous political assembly and 2) an assembly occurring in Westlake Park are all essential elements to Plaintiff's speech and assembly rights. Absent an injunction, Plaintiffs face the unacceptable choice of, on the one hand, accepting the attempt to chill their speech by altering their speech activities from what they have planned and designed as the most effective manner of conveying their message, or, on the other hand, defying Defendants under threat of arrest and prosecution. Injunctive relief is the only way to avoid irreparable harm to Plaintiffs.

### C.     The balance of equities and public interest.

The balance of the equities mitigates for injunctive relief. Plaintiffs are individuals and organizations working on behalf of Seattle's homeless population and who wish to exercise their constitutionally protected speech and assembly rights, while Defendants constitute a well-financed municipal corporation that is fully capable of writing and administering a constitutionally sound ordinance. Plaintiffs have planned and organized a one-day demonstration

PLAINTIFF'S EMERGENCY MOTION FOR
INJUNCTIVE RELIEF

Page 23

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516

to express a carefully crafted political message about issues no less significant than life and death for Seattle's homeless, Dec. of Morrow at para. 17, while Defendants have delayed, limited, and ultimately denied a permit that is well within the scope of their discretion and past practice. Plaintiffs' demonstration does not place any extraordinary burden on Defendants.

The public interest also mitigates in favor of injunctive relief. The public has a strong interest in the vindication of individual constitutional rights, particularly "in encouraging the free flow of information and ideas" under the First Amendment. *Crue v. Aiken*, 137 F.Supp.2d 1076, 1091 (C.D. Ill. 2001).

## CONCLUSION

The parks permitting ordinance's flaws, including the absence of standards to guide administrator discretion, the lack of a consistent and transparent record of decision-making, the informal internal review process and inability to receive meaningful judicial review, together with the indicia of content- or viewpoint-based regulation result in, at the very least, an unconstitutional ordinance, and at worst, invidious viewpoint discrimination.

In either case, all elements for obtaining an injunction are met, and the court should order the Defendants to allow Plaintiffs to carry out their peaceful demonstration and assembly on April 24-25 and should order all permit applications issued for free speech activities be granted until the ordinance's constitutional flaws are resolved.


Respectfully submitted this 19th day of April, 2012.

By: s/Braden Pence

Braden Pence #43495
Law Office of Braden Pence PLLC
1102 8th Ave, #714
Seattle, WA 98101

1   Telephone: (206) 551-1516
    Fax: (206) 673-2223
2   Email: braden@pencefirm.com
    Attorney for Plaintiffs
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

LAW OFFICE OF BRADEN PENCE PLLC
1102 EIGHTH AVE., #714
SEATTLE, WA 98101
PHONE: (206) 551-1516