Honorable Richard Jones

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| REAL CHANGE, a Washington non-profit corporation, SHARE, a Washington non-profit corporation; WHEEL, an unincorporated association; NICKELSVILLE, an unincorporated association; TIM HARRIS, an individual; JARVIS CAPUCION; an individual; and TRACEY DEGARMO, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY OF SEATTLE and SEATTLE PARKS AND RECREATION, a Washington Municipal corporation; CHRISTOPHER WILLIAMS, in his individual and official capacity; JEFF HODGES, in his individual and official capacity;<br><br>Defendants. | No.   2:12-cv-681<br><br>DEFENDANTS' OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION<br><br>April 23, 2012 @1:30 p.m. |

Defendants City of Seattle, City of Seattle Department of Parks and Recreation, Christopher Williams, and Jeff Hodges (collectively "City") hereby submit their opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

DEFENDANTS' OPPOSITION TO EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
(2:12-cv-681) - 1

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

## I.   FACTS

On April 3, 2012, Plaintiffs, through Tim Harris, submitted an application to the Parks Department requesting a permit for a "24-hour protest encampment" at Westlake Park. Mr. Hodges telephoned Mr. Harris and informed him that the Department would issue a permit to allow the protest but not camping, in accordance with Seattle's No Camping Ordinance and the past practice of the Department in issuing use permits for Westlake Park. The Plaintiffs asked for an appeal which was heard in person by parks Superintendent Christopher Williams. Superintendent Williams affirmed Jeff Hodge's decision but offered to allow Plaintiffs to erect up to four "symbolic " unoccupied tents. On April 19, 2012, Mr. Harris submitted a new application for a rally without overnight camping. The Department approved of that application and issued a permit for the rally on Friday April 20, 2012, the date of this submission. See, Hodges Declaration and Exhibits.

### A.   The "Occupy Seattle" camps

Prior to receipt of Plaintiff's permit application, the Parks Department had very recent experience with unauthorized and illegal camping in Westlake Park. In October of 2011, Occupy Seattle began a protect encampment where multiple tents were erected and occupied overnight in violation of City law. The Occupy Seattle group was ordered to remove their tents on Thursday, October 6, 2011. Members of Occupy Seattle then began to work with the Parks Department to secure a permit for use of Westlake Park to allow free speech activities. The Parks Department issued a permit that allowed Occupy Seattle to hold rallies, assemblies and protests, and to erect an informational tent at Westlake Park, but did not allow camping.

On October 13, 2011, the Parks Department was forced to amend the Westlake permit because the informational tent was being used to store camping and other personal articles, which

DEFENDANTS' OPPOSITION TO EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
(2:12-cv-681) - 2

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

facilitated unpermitted camping in and around the informational tent during closed hours the night before. Representatives of Occupy Seattle agreed to abide by the new terms which included no storing of materials in the informational tent other than informational materials and first-aid supplies, and to allow no more than two persons to stay with the tent during closed hours.

Regardless of the new terms, on the night of October 13, 2011, the informational tent was again piled with personal articles and camping equipment, including flammable fuel tanks. Numerous people congregated within and around the tent after park closing hours, despite the condition that only two persons were allowed. On Friday, October 14, 2011 the Parks Department issued a letter to an Occupy Seattle representative informing him that the permit was revoked because of the violations.

On Saturday, October 15, 2011, Occupy Seattle's held another event, attracting as many as 3,000 people who rallied and marched in support. The rally, however, led once again to the erection of more than a hundred tents in Westlake Park the night following the rally, which remained through Sunday night. On Monday morning, October 17, the tents were removed, but several arrests were made.

That Monday, October 17, 2011, a representative of Occupy Seattle applied for another extended five-month permit for use of Westlake Park. Because of the past problems involving violations of laws, rules and permit conditions, including unauthorized camping, storage of improper materials in the informational tent, assembly of persons during closed hours and littering, as well as the burdens that would be placed on other park uses (including general public use and other permitted events) the Parks Department did not grant a five-month long permit, but worked with the applicant to permit an informational tent, up to two tables, two portable toilets, up to three

DEFENDANTS' OPPOSITION TO EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
(2:12-cv-681) - 3

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

hours of amplified sound between the hours of 9:00 am to 10 pm, and allowed for gatherings of up to 300 people for a one-week period.

On the night of Wednesday, October 26, 2011, Occupy Seattle held a concert. However, although the permit provided that noise levels needed to be within the limits specified by Seattle's noise ordinance, police received complaints about the noise from three residents of a nearby condominium. One of the residents had a decibel meter that showed noise levels of 105 db for well over a minute from the front door of his building. A responding police officer observed windows in the building rattling.

During the illegal encampments that occurred during last year's Occupy Seattle Protests, the City was forced to address numerous problems including assaults, accumulation of garbage, noise, public urination, the clogging of the parks fountain, and the intimidation of passers-by. When the encampment moved to Seattle Central Community College, the college faced unsanitary conditions, discarded hypodermic needles, smoking of marijuana, garbage and assaults. These are problems attendant with the dense concentration of many campers in a confined area. Westlake Park, however, is not a campground, but rather is a small public "square" (actually a triangle) surrounded by businesses, condominiums and two busy streets. it is not designed or intended to accommodate a large number of campers.

DEFENDANTS' OPPOSITION TO EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
(2:12-cv-681) - 4

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

## II. ARGUMENT

### A. Plaintiff has not met its burden to show that it is likely to prevail on either its facial challenge to the City's No Camping Ordinance or its as-applied challenge to the City's enforcement of that ordinance.

Plaintiffs are not likely to prevail on the merits[1] of this case, with respect to their facial and as-applied challenges to Seattle Municipal Code (SMC) Chapter 18.12, the Seattle Parks Code.

Plaintiff attacks the entire Seattle Parks Code. However, the focus of the present motion is whether the First Amendment compels the City to forego enforcement of one specific law, the parks Code's No Camping Ordinance. Even though camping may be deemed expressive conduct protected by the First Amendment, Plaintiff has cited no case that invalidates a no camping rule in a traditional public forum. Rather, where such a rule has been duly promulgated and adequate public notice, given, the courts have held that no camping rules in public parks are valid time, place and manner restrictions under the First Amendment. Seattle's No Camping Rule, Seattle Municipal Code (SMC) 18.12.250 is such a rule.

The No Camping Ordinance is a content-neutral ordinance that simply bans camping in City parks. It is not aimed at expressive conduct. "[A] facial freedom of speech attack must fail unless, at a minimum, the challenged statute 'is directed narrowly and specifically at expression or conduct commonly associated with expression.'" *Roulette v. City of Seattle*, 97 F.3d 300, 305

---

[1] A plaintiff seeking a preliminary injunction must establish (1) likely success on the merits; (2) likely irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). Under the "sliding scale" approach to preliminary injunctions observed in this circuit, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies,* 632 F.3d at 1131 (citing *Clear Channel Outdoor, Inc. v. City of Los Angeles,* 340 F.3d 810, 813 (9th Cir.2003)). "[A]t an irreducible minimum," **\*1106** though, "the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Guzman v. Shewry,* 552 F.3d 941, 948 (9th Cir.2009).

DEFENDANTS' OPPOSITION TO EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
(2:12-cv-681) - 5

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

(9th Cir. 1996), *quoting*, City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 760, 108 S.Ct. 2138, 2145-46, 100 L.Ed.2d 771 (1988).

With respect to the as-applied challenge, Parks Superintendent Christopher Williams, has not exercised any discretion to waive the application of the No Camping Ordinance, but has merely applied the ordinance's ban on camping as written. In fact, the Parks Department has promulgated rules concerning both the promulgation of rules as well as the issuing of use permits. Hodges Declaration, Exhibits F and G.

Although Plaintiffs argue that camping has been allowed at Westlake Park before, a close examination of Plaintiff's witness' statement in support is not clear and is at most misleading. Scott Morrow in his declaration merely states, "The activity including the erection of several large tents, which remained in use for several consecutive days while the Permitted Use occurred." The statement does not state that camping was permitted. In the past the City has allowed open tents or canopies to remain unoccupied during permitted events at Westlake as was the case with 2011's Occupy Seattle protests. This does not constitute conclusive proof that the Superintendent has ever exercised discretion to allow camping in Westlake park.

Even if the No Camping Ordinance were on its face to confer unfettered discretion, as pointed out in *Occupy Fort Myers v. City of Fort Myers*, --- F.Supp.2d ----, 2011 WL 5554034 (M.D.Fla.), the remedy is to sever the Superintendent's authority to waive the ban, not to invalidate the ban itself. *Id*., at p. *13. Since he has not waived the ban in this case, the ordinance was properly applied.

Most importantly, Seattle's No Camping Ordinance is a valid time, place and manner restriction when applied to free speech activities in Westlake Park, a small urban park in the

DEFENDANTS' OPPOSITION TO EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
(2:12-cv-681) - 6

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

center of Seattle's downtown business district. The park is surrounded by both retail businesses and residential condominiums. The camping ban furthers the City's compelling interests maintaining the parks in an attractive and intact condition and in maintenance of the parks for the enjoyment of the public, interests that have been recognized as substantial (if not compelling) by the U.S. Supreme Court in *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 296, 104 S.Ct. 3065 (1984). The ban also furthers the City's interests in protecting the safety and convenience of persons and using the park including pedestrians traversing in or around the park, and maintaining security and peace for surrounding residents and businesses during nighttime hours.

In this case, the City agreed to issue a permit to Plaintiffs for a protest rally including the use of amplified sound during daylight hours. In addition, The City also offered Plaintiffs the option of erecting two open canopies and up to four "symbolic" tents, all of which could remain unoccupied overnight. Not only has the City enacted and applied its No Camping and No structures laws in a content neutral manner, it has offered ample alternative channels to allow Plaintiffs to communicate their message.

> **B.  Even if camping is expressive conduct protected by the First Amendment, the federal courts have not compelled cities to allow camping where no camping laws are reasonable time, place and manner restrictions.**

Plaintiffs have not cited any case that holds that a validly promulgated no camping rule in parks is invalid under the First Amendment. Rather, even if camping can be deemed to be expressive protected activity, such no camping rules have been upheld as valid time, place and manner restrictions. In *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065 (1984), the U.S. Supreme Court assumed, without deciding, that camping or

DEFENDANTS' OPPOSITION TO EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
(2:12-cv-681) - 7

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

"overnight sleeping in connection with [a] demonstration is expressive conduct protected to some extent by the First Amendment." In that case, demonstrators challenged the United States National Park Service's ("NPS") denial of permission to sleep in tents that were erected on the Mall and Lafayette Park in Washington, D.C. as part of a demonstration intended to call attention to the plight of the homeless. NPS regulations permitted camping only in areas designated for camping, and the Mall and LaFayette Park were not designated camping areas. Although the Supreme Court assumed that camping was expressive conduct, the Court concluded that a National Park Service regulation prohibiting camping in parks was a reasonable time place and manner restriction. *Id*. at 294-295. In so doing, the Court noted that it was apparent that the prohibition focused narrowly focuses on the Government's substantial interest in maintaining the parks in an attractive and intact condition. As the Court stated, to permit camping would be contrary to Government's interest in maintenance of the parks for the enjoyment of the public. *Id*. at 296. Further, a restriction on camping in those parks is "readily understood" as contrary to that government interest by anyone who had visited National Parks across the country and observed the unfortunate consequences of the activities of those who refuse to confine their camping to designated areas. *Id*.

Other Federal courts also have upheld general prohibitions on camping in public parks and other traditional public fora, even if that activity was considered expressive conduct protected by the First Amendment. In the *Occupy Minneapolis* case, protestors established a campsite in two plazas immediately adjacent to a County Government Center. *Occupy Minneapolis v. County of Hennepin*, ___ F.Supp. ___, 2011 WL 5878359. In response, the County passed a resolution restricting activity in the plazas, including placing structures and

DEFENDANTS' OPPOSITION TO EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
(2:12-cv-681) - 8

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

sleeping. *Id*. at *2. The Court concluded that the resolution's prohibitions on sleeping and erecting tents in the plazas constituted a reasonable time, place and manner restriction. *Id*. at *6. Further, the Court stated that conclusion was "dictated" by the *Clark* case. *Id*. The Court declined to distinguish between sleeping and erecting tents in the plaza, noting that there was no private constitutional right to erect a structure on public property. *Id*. In so doing, the Court quoted the following from the Seventh Circuit's decision in *Lubavitch Chabad House, Inc. v. City of Chicago*: "We are not cognizant of, nor has the appellant appraised us of, any private constitutional right to erect a structure on public property. If there were, our traditional public forums, such as our public parks, would be cluttered with all manner of structures. Public parks are certainly quintessential public forums where free speech is protected, but the Constitution neither provides, nor has it ever been construed to mandate, that any person or group be allowed to erect structures at will. *Id*. citing *Lubavitch Chabad House, Inc. v. City of Chicago*, 917 F.2d 341, 347 (C.A.7 (Ill.),1990)

In *Watters v. Otter*, the group Occupy Boise erected a tent city on the grounds of a County Courthouse to protest income inequality. *Watters v. Otter,* ___ F.Supp.2d ___, 2012 WL 640941. In response, the State legislature enacted legislation to prohibit camping on State property, and also authorize the removal of any unauthorized personal property from State property. *Id*. at *2. Occupy Boise then moved for an injunction to prevent enforcement of the legislation. The Court denied an injunction to prevent enforcement of the ban on overnight camping, and the ban on storing personal items related to camping, relying upon the *Clark* decision upholding similar regulations. *Id*. at *7. That Court did enjoin removal of symbolic

DEFENDANTS' OPPOSITION TO EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
(2:12-cv-681) - 9

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

tents with no occupants, primarily because of the facts in that case, and the appearance that removal of the tents based on the specific legislation at issue was content based. *Id.* at 5.

In *Occupy Columbia v. Haley*, the Occupy Columbia group began a protest encampment on the State House grounds. *Occupy Columbia v. Haley*, ___ F.Supp.2d ___, 2011 WL 6318587. After an announcement from the governor that no one would be allowed to camp on the grounds overnight, Occupy Columbia sought an injunction to prevent interference with their occupation of the grounds, including sleeping and the use of tents. *Id.* at 2. In its consideration of the case, the Court acknowledged the *Clark* case and its progeny, and recognized that the "State may properly regulate conduct on the State House grounds, including prohibiting camping and sleeping." *Id.* at 7-8. But the Court concluded that there were no clear regulations that had been adopted or promulgated to prohibit such activity. *Id.* at 9-10. Based upon that conclusion, the Court held that the plaintiffs made a clear showing that they were likely to succeed on the merits in challenging the "unwritten policy prohibiting camping and sleeping on the State House grounds. *Id.* at 11. *See also Occupy Fort Meyers v. City of Fort Meyers*, ___ F.Supp.2d___, 2011 WL 5554034, *14 (M.D. Fla. 2011)(holding that plaintiffs did not establish a likelihood of success on their claim of a fundamental right to remain in a public park during hours the park is closed to the public).

### C. The City's No Camping law is a reasonable time, place and manner restriction.

"Even in a public forum, the government may impose reasonable restrictions on the time, place, or manner of protected speech." Ward v. Rock against Racism, 491 U.S. 781, 791, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989). Restrictions on expression in public fora are permissible if

DEFENDANTS' OPPOSITION TO EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
(2:12-cv-681) - 10

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

they are: 1) content neutral, 2) narrowly tailored to serve a significant governmental interest, and 3) leave open ample alternative channels of communication.  U.S. v. Griefen, 200 F.3d 1256, 1260 (9th Cir. 1999).

### 1. The No Camping Ordinance is content neutral.

"[G]overnment regulation of expressive activity is content neutral so long as it is '*justified without reference to the content of the regulated speech.*'"  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  A regulation that serves purposes unrelated to the content of expression is neutral, even if it has an incidental effect on some speakers or messages, but not others.  *Id.*; *Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 47-48 (1986); *Griefen*, 200 F.3d at 1260.  Where a regulation merely restricts where speech may occur, it is content-neutral.  *See, e.g., Hill v. Colorado*, 530 U.S. 703, 719-20, 120 S.Ct. 2480, 147 L.Ed.2d (2000).

In this case, Seattle's No Camping Ordinance is not directed at speech.  It simply bans camping for any purpose in a City park.  The fact that a park is a traditional public forum does not matter.  In *Roulette, supra*, the Ninth Circuit affirmed the holding that Seattle's no-sitting-on-sidewalks ordinance was constitutional on its face, even though sidewalks are traditional public forums.  The court rejected the argument that a content-neutral law aimed at conduct should be invalidated because a person engages is such conduct to express an idea:

> [P]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. [Citations omitted].
>
> This reasoning is eminently sensible.  One might murder certain physicians to show disapproval of abortion; spike trees in a logging forest to demonstrate support for stricter environmental laws; steal from the rich to protest perceived inequities in the distribution of wealth; or bomb military research centers in a call

DEFENDANTS' OPPOSITION TO EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
(2:12-cv-681) - 11

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

for peace. Fringe acts like these, however, provide no basis upon which to ground facial freedom-of-speech attacks on our laws against murder, vandalism, theft or destruction of property.

*Roulette*, 97 F.3d at 305.

Therefore, Plaintiffs are unlikely to prevail on the merits that SMC 18.12.250's ban on camping in City parks is invalid on its face.

### 2. The Superintendent's decision was content and viewpoint neutral.

Superintendent Williams applied his decision in a content and viewpoint-neutral manner. Plaintiffs argue that he discriminated on the basis of viewpoint in denying permission to camp because he stated that he did not want to set a bad precedent, and did not want to jeopardize pending criminal cases related to previous Occupy Seattle encampments. However, these statements have nothing to do either the content or viewpoint of Plaintiffs' message.

Allowing camping in contravention of the City's ordinance does set a bad precedent regardless of the proposed camper's purpose. The camping ban does not depend on whether a person has a message, or the viewpoint of the speaker. Furthermore, it is important to distinguish between camping and the permission to erect other structures such as carousels, stages, or tables. Plaintiffs would have the court believe that there is no difference between the holiday carousel and a protest encampment. In fact, the holiday carousel does not occupy the entire Westlake Park. This was recognized by Judge Pechman in 2001 when she issued an order compelling the City to allow a demonstration in the south end of Westlake park while the carousel occupied the north end. Order Granting Plaintiff's Motion for a Preliminary Injunction, dated November 30, 2001, Case No. C01-1928P (Scales Declaration, Exhibit C). Nor does it

DEFENDANTS' OPPOSITION TO EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
(2:12-cv-681) - 12

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

have the attendant problems that were associated with past camping experiences in Westlake park such as litter, noise, assaults and public urination.

The City's no Camping Ordinance is not targeted at speech, but rather the ill effects that are attendant to camping which the City's Parks are not designed nor intended to handle.

### 3.   The City has a compelling interest in restricting camping.

In *Heffron v. International Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 650 (1981) The U.S. Supreme court stated that "[I]t is clear that a State's interest in protecting the 'safety and convenience' of persons using a public forum is a valid governmental objective." Specifically with reference to camping in parks, the court, in *Clark*, *supra*, further recognized the government's substantial interest in maintaining parks in an attractive and intact condition and in maintaining the parks for the enjoyment of the public. *Id.*, 468 U.S. at 296.

In addition, because of Westlake Park's characteristics, the City has a compelling interest in protecting the safety and convenience of persons and using the park including pedestrians traversing in or around the park, and maintaining security and peace for surrounding residents and businesses during nighttime hours.

During the illegal encampments that occurred during last year's Occupy Seattle Protests, the City was forced to address numerous problems including assaults, accumulation of garbage, noise, public urination, the clogging of the parks fountain, and the intimidation of passers-by. When the encampment moved to Seattle Central Community College, the college faced unsanitary conditions, discarded hypodermic needles, smoking of marijuana, garbage and assaults. These are problems attendant with the dense concentration of many campers in a confined area. Westlake Park, however, is not a campground, but rather is a small public

DEFENDANTS' OPPOSITION TO EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
(2:12-cv-681) - 13

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

"square" (actually a triangle) surrounded by businesses, condominiums and two busy streets. it is not designed or intended to accommodate a large number of campers.

It does not matter that Plaintiffs' request is for just one day. There is no rational basis to conclude that the problems attendant with a large number of campers would be eliminated simply because the time of their occupation would be shortened. In addition, as was shown with the Occupy Seattle protests, non-compliance with vacating the space creates the biggest problem, requiring significant police resources and manpower and the high risk of confrontation and injury.

### 4. The City's permit decision offers ample alternative channels of communication

The City has issued a permit allowing Plaintiffs all aspects of their request except for camping. Even so, Superintendent Williams offered to allow Plaintiffs to erect up to four symbolic unoccupied tents along with two open canopies, all of which could remain overnight. In addition, Mr. Williams reminded Plaintiffs that the City Hall Plaza, a limited public forum that is not a park but has been opened by the City to camping as an expressive activity, is available to Plaintiffs for their occupation. Thus, the City has provided ample alternative channels of communication to allow Plaintiffs to convey their message. Furthermore, these options are narrowly tailored to address the City's concerns regarding the problems attendant with large numbers of campers in Westlake Park.

### 5. The First Amendment does not allow Plaintiffs to express itself in whatever manner it pleases.

DEFENDANTS' OPPOSITION TO EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
(2:12-cv-681) - 14

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

The First Amendment does not guarantee one a right to express in any manner he or she chooses. For example, "Even though [the park] is a public forum, the Naturists are not free to exercise First Amendment rights in any way they see fit." *Occupy Fort Myers,* at 6. "The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time." *Cox v. State of Louisiana*, 379 U.S. at 554.

Here, the City has offered Plaintiffs the option to erect symbolic tents in Westlake Park, and the option to actually camp in the City Hall Plaza, the very situs of CEHKC (Committee to End Homelessness in King County) meeting that they wish to protest. The City, therefore, has offered to allow Plaintiffs to convey their message to their intended audiences both at Westlake park and at City Hall in a manner that includes camping, whether real or symbolic, in both locales.

## III.  CONCLUSION

For the aforementioned reasons, the City respectfully requests that Plaintiff's request for a temporary restraining order be denied.

DATED this 20th day of April, 2012.

                PETER S. HOLMES
                Seattle City Attorney

                By:   /s/Gary T. Smith
                         WSBA #29718
                         /s/Carlton W. M. Seu
                         WSBA#26830
                         Assistant City Attorneys
                         Seattle City Attorney's Office
                         600 – 4th Avenue, 4th Floor

DEFENDANTS' OPPOSITION TO EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
(2:12-cv-681) - 15

PETER S. HOLMES
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

| | |
|---|---|
| 1 | P.O. Box 94769 |
| 2 | Seattle, WA  98124-4769 |
|   | Phone: (206)733-9318 – Gary |
| 3 | Phone: (206)733-9390 - Carlton |
|   | Fax: (206)684-8284 |
| 4 | E-mail: gary.smith@seattle.gov |
|   | E-mail: carlton.seu@seattle.gov |

Attorneys for Defendants

DEFENDANTS' OPPOSITION TO EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
(2:12-cv-681) - 16

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2012, I electronically filed the attached document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the below-listed:

Braden Pence, braden@pencefirm.com

DATED this 19th day of April, 2012, at Seattle, Washington.

By:   /s/Carlton W. M. Seu
Carlton W. M. Seu, WSBA #26830
gary.smith@seattle.gov

DEFENDANTS' OPPOSITION TO EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION
(2:12-cv-681) - 17

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200