# EXHIBIT C

1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

7   VANESSA LEE, K.L. SHANNON, AARON
    WOOD, JAMES GOETTLER, BOB BARNES,
8   and the N30 COALITION,                           No. C01-1928P

9                            Plaintiffs,            ORDER GRANTING
                                                    PLAINTIFFS' MOTION FOR A
10  v.                                              PRELIMINARY INJUNCTION

11  PAUL SCHELL, as Mayor of the City of Seattle,
    GIL KERLIKOWSE, as Chief of the Seattle
12  Police Department, and the CITY OF SEATTLE,

13                            Defendants.

14

15          This matter comes before the Court on Plaintiffs' Motion for a Preliminary Injunction. (Dkt.

16  No. 2). Plaintiffs seek a permit to demonstrate on November 30, 2001 in Westlake Park, Seattle.

17  The City of Seattle Committee on Special Events denied Plaintiffs' permit application, citing

18  competing and incompatible use by a holiday carousel. Because Plaintiffs have demonstrated

19  possible irreparable injury, a probability of success on the merits, and that the balance of hardship is

20  strongly in their favor, the Court GRANTS Plaintiffs' motion and ORDERS the City of Seattle to

21  issue a permit to the Plaintiffs for the use of the south end of Westlake Park on November 30, 2001.

22                                      BACKGROUND

23          Plaintiffs are organizers of a political demonstration which is planned for Westlake Park in

24  the early afternoon of Friday, November 30, 2001. Plaintiffs seek to commemorate the anniversary

25  of protests against the World Trade Organization ("WTO") ministerial summit in Seattle, as well as

26  continue to demonstrate against global capitalism. The N30 Coalition is an unincorporated

ORDER GRANTING PLAINTIFFS' MOTION
FOR A PRELIMINARY INJUNCTION - 1

1  association comprised of persons organizing events on November 30, 2001 commemorating

2  opposition to the 1999 WTO ministerial.

3       On July 17, 2001, Plaintiff James Goettler contacted the Parks Department and requested a

4  permit on behalf of the N30 Coalition for a permit to use Westlake Park the afternoon of November

5  30, 2001.  Mr. Goettler testified that an employee of the Seattle Parks Department informed him that

6  he would not be given an application for a permit because the Downtown Seattle Association

7  ("DSA") already had a permit for Westlake Park to operate a holiday carousel for that day.  The

8  carousel, apparently in its eighteenth year, currently has a permit for Westlake Park from mid-

9  November until early January.  However, when the Plaintiffs obtained a copy of DSA's permit, the

10  application was dated July 24, 2001, a week after Mr. Goettler had contacted the Parks Department.

11  (Sheehan Decl. Ex. 1 at 3).  Defendants offered no explanation, either at oral argument or in

12  submitted briefs, as to either why Mr. Goettler was refused an application or why he was told that a

13  permit had already been approved.

14       In early October of 2001, Mr. Goettler obtained and submitted an application for the use of

15  Westlake Park.  In the application, he estimated attendance at the event to be approximately 50

16  participants and 1,000 spectators.  (Swanson Decl. Ex. 1B at 1).  Special Events Co-Ordinator

17  Virginia M. Swanson responded to the application by indicating that the south end of the park could

18  be used if 200 persons or less were at the event.  (Id. Ex. 1C at 1).  Otherwise, Ms. Swanson

19  recommended scheduling the event at another downtown location.  (Id.).  The Parks Department has

20  approved a permit for a "Walk for Capitalism" on December 2, 2001, with an estimated attendance

21  of 20-60 participants and an unknown number of spectators.  (Pl's Ex. 1 at 1).  Mr. Goettler replied

22  to Ms. Swanson that the space at the south end of the park was unacceptable, and he requested use of

23  the north end of the park, which includes a built-in stage.  (Swanson Decl. Ex. 1C at 2).  Ms.

24  Swanson answered that if using the north end of the park required closing Pine Street, Mr. Goettler

25  would have to fill out a Special Event Application.  (Id. at 3).  The application that Mr. Goettler then

26  submitted was rejected by the Special Events Committee on November 14, 2001 on the grounds that

ORDER GRANTING PLAINTIFFS' MOTION
FOR A PRELIMINARY INJUNCTION - 2

1   the carousel had historical priority and the rally could not be accommodated in Westlake Park due to

2   the estimated number of people who would attend. (Id. Ex. 1I at 1). The Parks Department has a

3   policy of giving scheduling priority to events that have historically been held in certain places at

4   certain times, such as Fourth of July Fireworks at Gas Works and Myrtle Edwards Park. (Id. at 2-3).

5   Plaintiffs then sought review of the denial under a new administrative review procedure, which was

6   not yet legally in effect. (Id. Ex. 1I at 2-3). On November 27, the review committee affirmed the

7   decision denying the Special Events permit. (Id. Ex. 2 at 1). Plaintiffs then brought this suit in State

8   Court, and Defendants removed to this Court. Plaintiffs filed a motion for a preliminary injunction

9   on November 29, 2001, the day before the scheduled demonstration. The Court heard oral argument

10  on the same day the motion was filed, having only a few hours to consider the briefs filed by both

11  parties before issuing a ruling.

12      Plaintiffs assert a number of reasons why protesting at the Westlake Park location in

13  particular is important to convey their message. Plaintiffs aim to make a statement about global

14  capitalism, and wish to target the businesses and shoppers surrounding Westlake Park. They note

15  that other proposed sites do not offer them such access, to the extent that they are not located in the

16  central shopping district. Plaintiffs seek to challenge what they allege is the devotion of public space

17  and resources to corporate interests, which they claim Westlake has come to represent. Plaintiffs

18  also seek to commemorate events that took place at the Westlake in 1999 and 2000 on or about

19  November 30. Plaintiffs further indicate their belief that Westlake Park serves as the central civic

20  gathering place in the city, what they label a "town square." (Mem. Supp. Prelim. Inj. at 10).

21  Plaintiffs offered testimony that they had successfully worked with the City in the past to organize

22  and manage demonstrations. At oral argument, they offered a number mechanisms to ensure an

23  organized demonstration in Westlake Park, including peer monitors, perimeter control, and police

24  liaisons.

25

26

ORDER GRANTING PLAINTIFFS' MOTION
FOR A PRELIMINARY INJUNCTION - 3

ANALYSIS

The party moving for a preliminary injunction may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. See, e.g., Los Angeles Memorial Coliseum Com. v. National Football League, 634 F.2d 1197, 1201 (9th Cir. 1980). These are not separate tests, but the outer reaches of a single continuum. Id.

Balance of hardships

Plaintiffs raise serious First Amendment questions, and the balance of hardships clearly tips in the Plaintiffs' favor. First, there are questions regarding whether the City violated its own permit procedure in failing to provide the Plaintiffs with an application on request. This fact, along with other evidence presented, raises the issue of whether the permit procedure grants an unacceptable level of discretion to city officials. See Shuttlesworth v. Birmingham, 394 U.S. 147, 151 (1969). Additionally, Plaintiffs raise serious First Amendment issues regarding the critical importance of their choice for the location of the protest. See City of Ladue v. Gilleo, 512 U.S. 43, 57 (1994). At oral argument, Plaintiffs indicated their preference for a permit for the south end of Westlake Park over any other location, even if they are limited in the number of persons that can be accommodated. While closing off Pine Street would impose costs and potential hardship on the City, the same cannot be said for allowing protest in the part of Westlake Park not occupied by the carousel. Allowing the assembly in the south part of Westlake Park places little hardship on the City, but resolves many of the serious questions raised by Plaintiffs.

Probable success on the merits

In places by tradition open to assembly and debate, such as Westlake Park, the rights of the state to limit expressive activity are sharply circumscribed. Perry Education Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983). However, even in a public forum the government may impose reasonable restriction on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are

ORDER GRANTING PLAINTIFFS' MOTION
FOR A PRELIMINARY INJUNCTION - 4

1   narrowly tailored to serve a significant governmental interest, and that they leave open ample

2   alternative channels for communication of the information. Clark v. Community for Creative Non-

3   Violence, 468 U.S. 288, 293 (1984). Nonetheless, in considering alternative channels, the Court

4   considers whether the alternative forum allows the speaker to reach his or her intended audience.

5   See Gilleo, 512 U.S. at 57 (1994). First Amendment activity may not be banned simply because

6   prior similar activity led to or involved instances of violence. Collins v. Jordan, 110 F.3d 1363,

7   1372 (9th Cir. 1996). Rather than suppressing legitimate First Amendment conduct as a prophylactic

8   measure, the government has a responsibility to ensure an adequate police presence in order to

9   respond to those who actually engage in violence. Id. The record is clear that the Plaintiffs have

10   organized a non-violent demonstration, communicating to the Court their commitment to work with

11   the City to self-monitor and provide peer-based security.

12        Plaintiffs have fundamental and constitutionally protected right to engage in political speech.

13   This right must and will be protected by the Court. However, the Court is cognizant that even

14   political speech may be regulated subject to appropriate time, place, and manner restrictions.

15   Plaintiffs have articulated that Westlake Park is their forum of choice for a number of reasons.

16   Recognizing this, but aware of the public safety and competing use issues raised by the City, the

17   Court provided Plaintiffs with a choice at oral argument. Plaintiffs were allowed to choose either to

18   engage in their political speech in Westlake Park, subject to the reasonable time, place, and manner

19   restrictions imposed by the City, or at an alternative forum. Plaintiffs have unequivocally chosen

20   Westlake Park, but in doing so have accepted the restrictions regarding Park access.

21   Irreparable injury

22        Plaintiffs show the possibility of irreparable injury. They have been denied a permit to

23   protest in Westlake Park. While without a permit they may be allowed to congregate in the park,

24   they will be unable to hold their event in a meaningful sense. Without the requested relief, they will

25   not be able to set up a sound system, stage or platform, or otherwise organize the event that they have

26   planned. Plaintiffs faced possible arrest for congregating in Westlake without a permit. (Broberg

ORDER GRANTING PLAINTIFFS' MOTION
FOR A PRELIMINARY INJUNCTION - 5

1  Decl. at 3). The Plaintiffs have made a strong showing that staging their event in another location

2  would frustrate their message. The loss of these First Amendment freedoms constitutes irreparable

3  injury. See Foti v. City of Menlo Park, 146 F.3d 629, 643 (9th Cir. 1998).

4                                        CONCLUSION

5          The Court hereby ORDERS the City of Seattle to issue a permit to the Plaintiffs for the use of

6  the south end of Westlake Park, from 2 – 3:30 p.m., including a reasonable time to set up and clean

7  up. If and when the city determines that more than 200 persons are present at the protest, and that

8  the crowd cannot be safely contained, the crowd may be dispersed.  The grant of a permit is

9  conditioned upon Plaintiffs agreement to provide mechanisms to maintain an organized

10  demonstration, including peer monitors and a police liaison, as well as assist  in any lawful order to

11  disperse.

12          The Clerk is directed to send copies of this order to all counsel of record.

13          Dated this 30 day of November, 2001.

14
                                        Marsha J. Pechman
15                                      United States District Judge

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING PLAINTIFFS' MOTION
FOR A PRELIMINARY INJUNCTION - 6